USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/25/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                   :

ANTHONY GALLAGHER,                    :
                                   :

            Plaintiff,           :

                                   :             22-cv-10216 (LJL)

      -v-                      :

                                   :            OPINION AND ORDER

BOEHRINGER INGELHEIM PHARMACEUTICALS,  :
INC., et al.,                  :

                                 :

           Defendants.        :

                                 :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiff Anthony Gallagher ("Plaintiff") brings product liability claims against

Defendants Boehringer Ingelheim Pharmaceuticals, Inc. ("BI"), Sanofi U.S. LLC/Sanofi U.S.

Services Inc., Pfizer, Inc. ("Pfizer"), GlaxoSmithKline, LLC ("GSK"), Chattem, Inc.

("Chattem"), BJ's Wholesale Club, Inc. ("BJ's"), Club 204, CVS Health Corporation ("CVS"),

Store #2906  arising from his use of the antacid/heartburn medication, Zantac.  Dkt. No. 1-1.  He

alleges that he regularly and consistently purchased and ingested OTC Zantac from 2014 to 2019

(when the product was taken off the market) and, as a result, was diagnosed with kidney cancer

in November 2019.  *Id.* ¶¶ 7, 46, 48.  He brought this action in New York State Supreme Court,

New York County, asserting causes of action for strict liability-design defect, strict liability-

failure to warn, negligence, breach of express warranties, and breach of implied warranties.  *Id.*

¶¶ 49–143.  On December 1, 2022, counsel for the defendants other than Pfizer, Inc. ("Removing

Defendants"), removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446,

asserting diversity citizenship as a basis for removal.  Dkt. No. 1.

Plaintiff has moved to remand the case to state court. Dkt. No. 16. Certain defendants have moved to stay the action pending a ruling by the Judicial Panel on Multidistrict Litigation ("JPML") concerning the transfer of the action to the related *In re Zantac (Ranitidine) Product Liability*, Multidistrict Litigation No. 2924 ("Zantac MDL"). Dkt. No. 9.

For the reasons that follow, the Court denies the motion to remand, grants the motion for a stay in part and denies it in part, and stays further proceedings in this action pending a ruling by the JPML concerning the transfer of the action to the related Zantac MDL.

## BACKGROUND

### I.        Plaintiff's Allegations

Plaintiff was and is a resident of Brooklyn, New York, who was diagnosed with kidney cancer on November 5, 2019. Dkt. No. 1-1 ¶¶ 7–8.

Zantac was a popular antiacid/heartburn medication sold over the counter in the United States from 1995 until 2019. *Id.* ¶¶ 2, 7, 46. In 2019, Zantac was taken off the market after the United States Food and Drug Administration ("FDA") issued an official warning that taking Zantac on a regular or even sporadic basis was linked to a meaningfully higher chance of developing certain types of cancer. *Id.* ¶¶ 5, 44–46. Zantac contains N-Nitrosodimethylamine ("NDMA"), a potent carcinogen, in amounts far in excess of the allowable daily usage amounts permitted by the FDA. *Id.* ¶¶ 1, 3-4. Plaintiff alleges that he consumed Zantac "from 2014 to 2019 when the product was taken off the market." *Id.* ¶ 46. He also alleges that he was diagnosed with kidney cancer in November of 2019 and the cancer was caused by the ingestion of Zantac. *Id.* ¶ 48.

Pfizer was the original holder of the New Drug Application ("NDA") for over-the-counter ("OTC") Zantac and controlled the NDA between August 2004 and December 2006. *Id.* ¶ 12. GSK was the original inventor of the Zantac drug and controlled the NDA for prescription

Zantac between 1983 and 2009 in the United States.  *Id.* ¶ 13.  BI owned the United States rights

to OTC Zantac between 2006 and January 2017 and manufactured and distributed the drug in the

United States, including in the State of New York, during that period.  *Id.* ¶ 9.  Sanofi U.S.

Services Inc. has been engaged in the manufacturing, distribution, and sale of Zantac in the

United States and marketed, distributed, and sold OTC Zantac in the United States, including in

the State of New York, from January 1, 2017 until October 2019.  *Id.* ¶ 11.  It is the sole member

of Sanofi-Aventis U.S. LLC (together with Sanofi U.S. Services, Inc., "Sanofi").  *Id.* ¶ 10.

Defendants BI, Sanofi, Pfizer, and GSK are referred to in the Complaint as Manufacturer

Defendants and Plaintiff alleges that they designed, manufactured, marketed, distributed, labeled,

packaged, handled, stored, and/or sold Zantac.  *Id.* ¶ 14.

Chattem distributes OTC Zantac for Sanofi in the United States, including in the State of

New York.  *Id.* ¶ 15.  BJ's, BJ's Club 204, CVS, and CVS Store # 2906 (collectively, the

"Retailer Defendants") are retailers that marketed, handled, distributed, stored, and sold Zantac-

containing products in the State of New York.  *Id.* ¶ 21.

Plaintiff alleges that Zantac's active ingredient is the ranitidine molecule which breaks

down to form N-Nitrosodimethylamine ("NDMA") and has caused thousands of consumers of

ranitidine products to develop various forms of cancer, including but not limited to kidney

cancer.  *Id.* ¶ 30.  Plaintiff also alleges that manufacturers of Zantac knew that Zantac contained

potential carcinogens long before the public was made aware of the fact.  *Id.* ¶ 31.  However,

according to Plaintiff, Defendants did not inform the public of this and continued making excess

amounts in profit through the public's purchase and ingestion of the cancer-causing product.  *Id.*

In August 2022, Plaintiff sued the Manufacturer Defendants, the Retailer Defendants, and

Chattem for products liability.  Dkt. No. 1-1.  On December 1, 2022, the Removing Defendants

removed the case to this Court.  Dkt. No. 1.  On December 30, 2022, Plaintiff moved to remand

the case to state court.  Dkt. No. 16.  The Removing Defendants filed a memorandum of law in

opposition to the motion on January 13, 2023.  Dkt. No. 26.  Plaintiff filed a reply in support of

the motion to remand on January 20, 2023.  Dkt. No. 28.  In addition, on December 8, 2022, BI,

Sanofi, and GSK (the "Moving Defendants") filed a motion to stay.  Dkt. No. 9.  Plaintiff

opposed the motion to stay on January 9, 2023.  Dkt. No. 24.  Moving Defendants filed a

response in further support of the motion to stay on January 13, 2023.  Dkt. No. 27.

## II.    The Zantac MDL

Similar cases to Plaintiff's have been filed throughout the United States.  Those plaintiffs

allege that Zantac and its active ingredient, the ranitidine molecule, breaks down to form

NDMA, that the manufacturers, sellers, and distributors of Zantac knew or should have known

that the medications exposed consumers to NDMA and yet they concealed the NDMA-

associated dangers posed to consumers by the drugs.  They also allege that Zntac caused health

issues including cancer.  *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 437 F. Supp. 3d 1368

(U.S. Jud. Pan. Mult. Lit. 2020).  All such cases alleging personal injury or consumer fraud

claims have been consolidated and centralized for pretrial purposes by the JPML.  *See id*.

On December 1, 2022, the Removing Defendants removed the action to this Court

pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, on the grounds that all properly joined

Defendants were diverse from Plaintiff and the amount in controversy exceeded the jurisdictional

threshold.  Dkt. No. 1.  The following day, the Moving Defendants filed a tag-along notice with

the Zantac MDL.  Dkt. No. 9 at 2.  The JPML issued a Conditional Transfer Order 109 on

December 13, 2022.  Dkt. No. 25-2.  On January 3, 2023, Plaintiff moved to vacate the

Conditional Transfer Order.  Dkt. No. 20-1.

## PROCEDURAL HISTORY

Plaintiff filed his complaint in New York State Supreme Court, New York County, on August 11, 2022.  Dkt. No. 1-1.  On December 1, 2022, the Removing Defendants removed the action to this Court.  Dkt. No. 1.  On December 8, 2022, the Moving Defendants filed their motion for a stay.  Dkt. No. 9.  Plaintiff filed an opposition to the motion for a stay on January 9, 2023, Dkt. No. 24, and the Moving Defendants filed a reply memorandum in further support of the motion for a stay, Dkt. No. 27.

On December 30, 2022, Plaintiff filed his motion to remand and a supporting memorandum.  Dkt. Nos. 16–18.  The Removing Defendants filed an opposition to that motion on January 13, 2023, Dkt. No. 26, and, on January 20, 2023, Plaintiff filed a memorandum of law in further support of the motion, Dkt No. 28.

## DISCUSSION

The Court has before it two separate motions: Plaintiff's motion to remand and Defendants' motion for a stay.

The Court will first address the motion to remand.  Although the Court would have the power to stay the action pending the JPML's decision to transfer before ruling on the motion to remand, *see Ritchie Capital Management, LLC v. General Elec. Capital Corp.*, 87 F. Supp. 3d 463, 467 (S.D.N.Y. 2015); *Interstate Service Provider, Inc. v. Jordan*, 2021 WL 2355384, at *4 (E.D. Tex. June 9, 2021), the Court declines to exercise that discretion, *see Lalima v. Johnson & Johnson*, 2019 WL 2362362, at *7 n.8 (N.D.N.Y. May 24, 2019) ("the Court rejects any argument by Defendants that a court should stay an action over which it lacks subject-matter jurisdiction.").  Rule 2.1 of the Rules of Procedure for the JPML provides that "[t]he pendency of a . . . conditional transfer order . . . before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does

not limit the pretrial jurisdiction of that court."  "The mere pendency of a petition in the JPML

does not, of course, mandate a stay."  *Quinn v. JPMorgan Chase Bank, N.A.*, 2020 WL 3472448,

at *2 n.2 (S.D.N.Y. June 24, 2020).  The motion to remand is fully briefed.  "[S]ince the parties

have already briefed the remand issue in full, 'delay and costs would only increase if the Court

were to grant the stay and leave the remand issue for the MDL court to resolve at some later

date.'"  *Interstate Service Providers*, 2021 WL 2355384, at *5 (quoting *Durr v. Erwin*, 2013 WL

6079506, at *2 (S.D. Tex. Nov. 19, 2013)).  Moreover, the motion raises sensitive issues of

federalism and federal jurisdiction that warrant resolution with expedition.  Should it turn out

that the action was improperly removed, Plaintiff would be deprived of its choice of form and the

state courts will have been deprived of their right to decide a matter of state law without federal

interference.  "If this Court does not have jurisdiction, then the MDL court will not have

jurisdiction either."  *Labrecque v. Johnson & Johnson*, 2015 WL 5824724, at *2 (D. Conn. Oct.

2, 2015).  "'[I]n most instances, . . . both expedition and sensitivity to state courts' coequal

statute . . . impel' the Court to wrangle with subject matter jurisdiction at this juncture."

*Interstate Service Providers*, 2021 WL 2355384, at *5 (quoting *Ruhrgas AG v. Marathon Oil

Co.*, 526 U.S. 574, 587–88 (1999)).  If by contrast, the action was properly removed, neither

party will suffer prejudice by the Court having decided the issue; it will remove one more motion

for the parties to brief when and if the JPML transfers the case and for the transferee court to

address.  Finally, "Congress designed the removal-and-remand process to address jurisdictional

matters speedily."  *Id.* at *6.  This Court is perfectly capable of ruling, and ruling quickly, on the

motion to remand which involves questions both of federal law and of New York state law.  *See*

*Labrecque*, 2015 WL 5824724, at *2.[1]  Congress's objective would be defeated if the Court

deferred consideration of the motion until after the JPML decided the motion to transfer.[2]

  For the reasons discussed below, the motion to remand will be denied.  The Moving

Defendants properly invoke federal jurisdiction and have satisfied the procedural requirements of

---

[1] Moving Defendants argue that "[t]he Zantac MDL court has previously decided questions of diversity jurisdiction and fraudulent joinder and will likely do so in future cases."  Dkt. No. 27, at 2.  This Court has no doubt as to the competence of the Zantac MDL court to decide the issues presented here.  But the cases cited by Removing Defendants involve issues far different from those presented here.  *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2022 WL 708589, at *1 (S.D. Fla. Jan. 28, 2022) (addressing fraudulent joinder question in context of strict product liability, negligence and unjust enrichment claims brought against retailer under Missouri law); *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2021 WL 1989987, at *1 (S.D. Fla. Apr. 1, 2021) (rejecting argument that retailer defendants could not be held liable for ordinary negligence under Maryland law); *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2021 WL 650608, at *1 (S.D. Fla. Feb. 19, 2021) (granting motion to remand and rejecting fraudulent joinder argument where complaints alleged claims against California-based retailer under California law).  On the facts here, the interests of "[c]onsistency" and "economy" will not be served by having the Zantac MDL decide the issue.  *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990); *compare id.* (holding that such interests would be served by having the transferee court address motion to remand where the same jurisdictional question would be capable of arising in numerous cases).  Were the Court to defer ruling on the motion to remand, the Zantac MDL court would have to educate itself on issues regarding New York pleading standards and substantive New York tort law, which are familiar to this Court but which do not appear to have previously been addressed by that court.
[2] The cases cited by Moving Defendants do not support a contrary result.  In each of them, the party seeking the stay made a showing that the identical issue was one as to which the MDL court either had invested time or was likely to invest time in regardless of whether the putative transferor court addressed the issue first.  *See City of Amsterdam v. Purdue Pharma L.P.*, 2019 WL 5102564, at *3 (N.D.N.Y. Oct. 11, 2019) ("Permitting this action to proceed while judicial resources elsewhere are already devoted to determining the exact legal questions at issue here would be an inefficient use of judicial time and resources."); *Krieger v. Merck & Co.*, 2005 WL 2921640, at *2 (W.D.N.Y. Nov. 4, 2005) ("[T]he issue of whether pharmacy defendants were fraudulently joined to defeat diversity of jurisdiction is an issue that the MDL Court will decide under New York law in other cases."); *Med. Soc'y of State of New York v. Connecticut Gen. Corp.*, 187 F. Supp. 2d 89, 92 (S.D.N.Y. 2001) (stating that the court would decide the motion to remand "[i]f the underlying jurisdictional issue involved questions of law or fact not bound up with those involved in the multidistrict healthcare litigation, or if it were fairly obvious" but holding that court would grant stay where "the jurisdictional question at hand is a complicated one involving the application of ERISA preemption to the multiple state law claims asserted" and was "an issue which the MDL court has previously addressed on numerous occasions in the healthcare cases involving at least facially similar claims").

the removal statute.  After addressing the issues on the motion to remand, the Court will turn to

the question of whether further proceedings in this case should be stayed.

**I.        Motion to Remand**

Plaintiff argues that removal was improper and this case should be remanded to state

court because the presence of Pfizer in the case deprives the Court of diversity jurisdiction and

because Pfizer failed to consent to removal.  Dkt. No. 18 at 7–9.  Plaintiff also argues that CVS,

Store #2906 is a citizen of New York, depriving the Court of diversity jurisdiction, *id.*;

Removing Defendants failed to attach the requisite written consent of all defendants, *id.* at 3; and

the notice of removal was untimely, *id.* at 2.  Plaintiff also seeks an award of the costs and

attorneys' fees it incurred in connection with the removal.  *Id.* at 13–15.  Removing Defendants

respond that Pfizer was fraudulently joined to the case and that CVS Store #2906 is not a New

York citizen.  Dkt. No. 26 at 3–6.  Defendants also argue that the notice of removal was timely

because it was filed within thirty days of the last served Defendant and that the notice of removal

complied with the rule of unanimity.  *Id.* at 6–9.  According to Defendants, all properly joined

and served Defendants consented to removal when they signed the notice of removal.  *Id.* at 7.

**A.        Fraudulent Joinder**

The federal removal statute allows a defendant to remove to federal court "any civil

action brought in a State court of which the district courts of the United States have original

jurisdiction."  28 U.S.C. § 1441(a).  One of those bases of jurisdiction—the sole basis asserted

here—is diversity of citizenship.  The district courts "have original jurisdiction of all civil

actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between [] citizens of different States."  28 U.S.C. § 1332(a).  In order

to obtain diversity jurisdiction, there must be "complete diversity" so that no adverse parties are

citizens of the same state.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  Where

diversity jurisdiction is the basis for removal, complete diversity is required. *See Brown v. Eli*

*Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011) ("[c]omplete diversity of citizenship of the parties

is required, since an 'action shall be removable only if none of the parties in interest properly

joined and served as defendants is a citizen of the State in which such action is brought.'"

(quoting 28 U.S.C. § 1441(b))).

Plaintiff argues that Pfizer is properly joined in this case. If Plaintiff is correct, the

presence of Pfizer would defeat diversity jurisdiction. That is principally for two reasons. First,

it is undisputed that Pfizer is a citizen of the State of New York, as is Plaintiff, and thus there

would not be complete diversity. Second, Pfizer did not provide written consent to removal and

thus, if it is properly named, its failure to provide written consent would defeat the rule of

unanimity, which requires that "all defendants who have been properly joined and served must

join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Defendants respond

that Pfizer has been fraudulently joined—its presence cannot defeat diversity jurisdiction nor was

its consent required for removal.

Generally, a "plaintiff is the master of the complaint," *Cortese v. Skanska Koch*, *Inc.*,

2021 WL 429971, at *6 (S.D.N.Y. Feb. 8, 2021) (citation omitted), however, "[a] plaintiff may

not defeat diversity jurisdiction by improperly joining a non-diverse defendant with no genuine

connection to the matter." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011). "The

doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an

effort to defeat federal jurisdiction." *Id.* (citation omitted). "Under the doctrine, courts overlook

the presence of a non-diverse defendant if from the pleadings there is no possibility that the

claims against that defendant could be asserted in state court. The defendant bears the heavy

burden of proving the circumstances by clear and convincing evidence, with all factual and legal

ambiguities resolved in favor of plaintiff." *Bounds v. Pine Belt Mental Health Care Resources*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 302 (2d Cir. 2004)).  Put otherwise, "[i]n order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).  "[C]ourts apply the state pleading rules relevant to the particular pleading at issue in deciding whether a plaintiff could have asserted a viable claim in state court based on that pleading." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 394 (S.D.N.Y. 2009).  "If even one of the plaintiff's claims against a non-diverse defendant can survive, the action must be remanded." *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006).

Defendants argue that there is no possibility that Plaintiff could assert a claim against Pfizer in state court.  Plaintiff alleges that he purchased and ingested OTC Zantac "from 2014 to 2019 when the product was taken off the market," following the FDA's warning.  Dkt. No. 1-1 ¶ 46.  Pfizer is alleged to have controlled the NDA for OTC Zantac between August 2004 and December 2006. *Id.* ¶ 12.  By contrast, BI owned the United States rights to OTC Zantac between 2006 and January 2017, *id.* ¶ 9, and Sanofi marketed, distributed, and sold OTZ Zantac in the United States from January 1, 2017 until October 2019, *id.* ¶ 11.  Since Pfizer gave up the rights to OTC Zantac eight years prior to when Plaintiff began ingesting the product, Defendants argue that there is no basis upon which it can be liable to Plaintiff.

"New York law . . . requires a plaintiff seeking recovery for an injury caused by a defective product to prove that the defendant manufactured the product." *Goldych v. Eli Lilly & Co.*, 2006 WL 2038436, at *6 (N.D.N.Y. July 19, 2006). A manufacturer cannot be held liable for injuries stemming from another manufacturer's product. *See id.*; *see also Montero v. Teva Pharmaceuticals USA Inc.*, 2019 WL 6907467, at *1–2 (S.D.N.Y. Dec. 4, 2019) (manufacturer of brand name drug not liable for injuries caused by generic version); *Rosser v. Sanofi-Aventis*, 2018 WL 4080351, at *4 (S.D.N.Y. Aug. 26, 2018) (same); *Coleson v. Janssen Pharmaceutical, Inc.*, 251 F. Supp. 3d 716, 721 (S.D.N.Y. 2017). Although Plaintiff seeks to distinguish these cases on the grounds that they each involved the alleged liability of the innovator for drugs sold by a generic manufacturer, the cases turn upon a more general propositions that a manufacturer is not liable for products over which it exercises no control. *See Coleson*, 251 F. Supp. 3d at 721. As the Supreme Court of New York stated in *Weese v. Pfizer*, while a manufacturer has "a duty in connection with its own products and labels," that duty does not "extend to products and labeling over which it has no control, even if those products and labels mirror its own, *because it has done nothing toward putting them in the hands of consumers*." 2013 WL 5691993, at *2 (N.Y. Sup. Ct. Oct. 08, 2013) (emphasis added); *see In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 949 (6th Cir. 2014); *Coleson*, 251 F. Supp. 3d at 721. "'One common element to any products liability claim'—whether sounding in strict liability or negligence—'is that the plaintiff's alleged injury must have been caused by a product that the defendant sold or placed into the stream of commerce.'" *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 400 (S.D.N.Y. 2018) (quoting *Rizzo v. Applied Materials, Inc.*, 2016 WL 1122063, at *2 (N.D.N.Y. Mar. 22, 2016)).

Here, Pfizer was no longer in control of Zantac when it caused Plaintiff's injuries. Plaintiff neither alleges that he purchased Zantac from Pfizer nor does he allege that Pfizer was responsible for placing the Zantac that he did purchase into the stream of commerce. Instead, the complaint alleges that Pfizer gave up its rights to OTC Zantac eight years prior to when Plaintiff began ingesting the product. Plaintiff's thus pleading does not establish the basis for a cause of action against Pfizer. Plaintiff says that "Pfizer's role is thoroughly specified in the five causes of action alleged against same in Plaintiff's complaint, and Pfizer's role is wholly proper at this juncture." Dkt. No. 18 at 12; *see also id*. at 13. But those are mere conclusory allegations. Plaintiff does not allege a role that Pfizer had with respect to Zantac that could have resulted in Plaintiff's injury.[3]

Plaintiffs' remaining arguments are without merit. Plaintiff argues that the district court decision in *Kuperstein*, 457 F. Supp. 2d 467, is "on all fours" with this case and supports remand. Dkt. No. 18 at 12. In *Kuperstein*, plaintiffs brought state law claims for products liability against the manufacturers of a prescription drug that allegedly caused injury to their child and medical malpractice claims against the physicians who prescribed the drug. 457 F. Supp. 2d at 469. Plaintiffs argued that complete diversity was defeated by the presence of the physicians, and defendants responded that the physicians were improperly joined. *Id.* at 470. The court rejected the claim of fraudulent joinder and remanded the action because the complaint alleged that the doctor defendants treated the child and prescribed the drug without obtaining informed consent. *Id.* at 473–74. Because the claim of lack of informed consent would survive a New York state

---

[3] In his reply brief, Plaintiff suggests that discovery is necessary to determine whether "the pills Plaintiff ingested" were produced by Pfizer. Dkt. No. 28 at 4. But Plaintiff does not allege that the pills he ingested were manufactured by Pfizer nor on the facts alleged would any such contention be plausible.

court motion to dismiss, the doctor defendants were properly joined and remand was required. *Id.* The case bears no resemblance to this case where there is no allegation that Pfizer had anything to do with the product that was sold to Plaintiff.[4]

Plaintiff also relies on the fact that Pfizer is listed as a "common defendant" in the order of the JPML ordering that the personal injury actions and related consumer class actions arising out of the sale and marketing of Zantac be consolidated and centralized for pretrial proceedings pursuant to 28 U.S.C. § 1407. *See In re Zantac (Ranitidine) Products Liability Litig.*, 437 F. Supp. 3d 1368, 1368 n.4 (J.P.M.D.L. Feb. 6, 2020); Dkt. No. at 12, 13. But that order is properly understood to require that cases properly brought against one or more of the common defendants arising from the sale and marketing of Zantac are to be centralized in the Southern District of Florida. It cannot be understood to hold that every case in which any of the common defendants is named is one in which under the applicable state law all other defendants face liability.

**B.      The Rule of Unanimity**

Plaintiff argues that remand is necessary because the Notice of Removal fails to attach letters from each of the properly served and joined defendants unambiguously agreeing to removal. Dkt. No. 18 at 3-4. Plaintiff notes that instead the "Notice of Removal just includes electronic signatures under the Responding Defendants' Notice of Removal under a line that reads 'Consenting to Removal.'" *Id.* at 4 (citation omitted).

---

[4] The decision in *Lociero v. Sanofi-Aventis U.S. Inc.*, 2009 WL 2016068 (W.D.N.Y. July 10, 2009), also is of no help to Plaintiff. In that case, the court rejected the argument that a case must be remanded where, based upon deposition testimony, it is clear that the plaintiff would not be able ultimately to prevail on its claims against the non-diverse party, holding that the test for fraudulent joinder turns upon the content of the pleadings and not the evidence that would be offered on summary judgment. *Id.* at *2. Here, based on the pleadings, Plaintiff has not stated a claim that would survive the New York standards on a motion to dismiss.

Section 1446(b)(2)(A) of Title 28 provides what when an action has been removed on the basis of diversity jurisdiction, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Under this "rule of unanimity," all defendants must consent to removal within the statutory thirty-day period for removal of an action. *See Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012). The Second Circuit has held that defendants "must independently express their consent to removal." *Id.* The courts in this District have interpreted that rule to require that "each defendant must submit written consent unambiguously agreeing to removal." *Payne v. Overhead Door Corp.*, 172 F. Supp. 2d 475, 477 (S.D.N.Y. 2001). Thus, "[i]t is insufficient for a defendant who has not signed the removal petition to merely advise the removing defendant that it consents to removal and that the removing defendant may represent such consent to the Court on its behalf." *In re Village of Kiryas Joel, N.Y.*, 2012 WL 1059395, at *3 (S.D.N.Y. Mar. 29, 2012) (quoting *Codapro Corp. v. Wilson*, 997 F. Supp. 322, 326 (E.D.N.Y. 1998)); *see also Amparo v. City of Yonkers*, 2021 WL 2313468, at *1 (S.D.N.Y. May 10, 2021) (same). "The failure of any defendant to provide its written consent within the thirty-day period constitutes a fatal procedural defect in the removal procedure and warrants a remand of the case." *Kiryas Joel*, 2012 WL 1059395, at *3.

The rule of unanimity was satisfied in this case. This is not a case in which one defendant has represented in the notice of removal that all defendants have consented to removal. Here, each of the properly served defendants represented through counsel that such defendant consented to removal. The notice of removal identified Sanofi and Chattem as the Removing Defendants. Dkt. No. 1 at 1. Below the signature blocks for those defendants, the notice of removal included signatures for counsel for BI, GSK, BJ's, and CVS under the line "Consenting

14

to Removal." Dkt. No. 1 at 14.  Although Plaintiff cites cases for the proposition that each

properly served defendant must independently express their consent to removal, those cases do

not stand for the proposition that such written consent must be provided in a particular form or

that the consent may only be expressed through a separate piece of paper.[5]  Where the rules

require a "separate document" to be filed, they tend to specifically state that.  *See* Fed. R. Civ. P.

58(a) (requiring that "[e]very judgment and amended judgment must be set out in a separate

document").  Neither the statute nor the Circuit court require consent to be contained in a

separate document.  For that reason, the courts that have addressed the issue have uniformly held

that where counsel for a defendant has affixed a signature to the statement in writing that such

defendant has consented to removal, the signature is in and of itself sufficient regardless whether

the representation is freestanding or contained on the notice of removal.  *See Neuman v. Machne*

*of Richmond*, 2022 WL 1591056, at *5 (E.D.N.Y. May 19, 2022) ("where, as here, counsel

represents co-defendants and states that both defendants consent to removal, the rule of

unanimity is satisfied") (citing cases); *Worth v. Picard*, 2021 WL 5447121, at *2 (D. Conn. Nov.

22, 2021) (holding that it was "evident" that all parties joined in a notice "as reflected by the

relevant attorneys' signatures on the notice itself"); *Dunlop v. City of New York*, 2006 WL

2853972, at *3 (S.D.N.Y. Oct. 4, 2006) (finding the rule of unanimity satisfied where legal

---

[5] In the cases cited by Plaintiff, the removing defendants failed to timely obtain and submit any written consent from some or all of the non-removing defendants. *See, e.g. Gold Town Corp. v. United Parcel Serv., Inc.*, 519 F. Supp. 3d 169, 175 (S.D.N.Y. 2021) ("Although the Court does not have any reason to question the declaration from counsel for UPS that Ransom provided verbal consent to removal, the Court finds that the lack of written consent is fatal to UPS's removal action."); *Rivera v. Avilala*, 2021 WL 5513697, at *1 (S.D.N.Y. Nov. 24, 2021) ("Although Avilala stated in the removal petition that EAN consents to removal, EAN did not sign the removal petition or provide unambiguous written consent to removal within the thirty day removal period."); *Metro. Transp. Auth. v. U.S. Fid. & Guar. Co.*, 2015 WL 1730067, at *1 (S.D.N.Y. Apr. 14, 2015) ("General Star failed to obtain timely written consent to the removal from its co-defendants.  The remand motion is, therefore, granted.").

counsel for all defendants stated in the notice of removal that "all defendants have consented to removal of this action"); *Piacente v. State Univ. of New York at Buffalo*, 362 F. Supp. 2d 383, 384 (W.D.N.Y. 2004) ("The rule of unanimity has been satisfied here because counsel for all defendants signed Research Foundation's notice of removal."); *cf. Kiryas Joel*, 2012 WL 1059395, at *3 ("the rule of unanimity is not satisfied unless the other defendants either sign the notice of removal or subsequent provide the Court with their unambiguous written consent to removal within the thirty-day period.").

C.    **Citizenship of CVS**

Plaintiff argues that CVS Store #2906 operated by CVS Albany, LLC is a non-diverse citizen of New York destroying diversity.  Dkt. No. 18 at 8.  Plaintiff contends that Defendants' allegation that CVS Albany, LLC is a subsidiary of CVS Pharmacy, Inc. and is therefore its sole member is not sufficient as a matter of law because "it is membership, not ownership, that is critical for determining the citizenship of an LLC."  *Id.* at 8 (quoting *Viera v. Specialized Loan Servicing, LLC*, 2022 WL 3716241, at *2 (N.D.N.Y. Aug. 29, 2022)).

For the purposes of diversity jurisdiction, the citizenship of an LLC is determined by the citizenship of its members.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990); *Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 122 (2d Cir. 2013).  Here, the Notice of Removal states that CVS Store #2906 is operated by CVS Albany, LLC, and that the sole member of CVS Albany, LLC is CVS Pharmacy, Inc, a Rhode Island corporation with its principal place of business in Rhode Island.  Dkt. No. 1 ¶ 23.  That Notice of Removal is signed by counsel for CVS Albany, Inc.  It follows that CVS Store #2906 is a citizen of Rhode Island for purposes of diversity jurisdiction and thus Defendants have properly established diversity jurisdiction.  *See Woods v. CVS*, 2013 WL 1736587 at *1 n.1 (S.D.N.Y. Apr. 19, 2013) (stating that the sole member of CVS Albany, L.L.C. is CVS Pharmacy, Inc.).

D.      **Timeliness of Notice of Removal**

Plaintiff argues that the notice of removal is untimely as to Sanofi U.S. Services, Inc.

Dkt. No. 18 at 2–3.  Although conceding that the notice of removal for Chattem was timely,

Plaintiff nonetheless argues that it is untimely as to Sanofi because service was effectuated on

August 19, 2022 and thus it had until September 18, 2022 to file the notice of removal.  *Id.* at 2.

Removing Defendants respond that if the notice of removal was timely as to any of the

Removing Defendants it is timely as to all, that Sanofi US Services Inc. was not served until

November 3, 2022, and that Sanofi-Aventis U.S. LLC still has not been properly served.  Dkt.

No. 26 at 6–7 & n.5.

Section 1446(b)(2)(B) of Title 28 provides: "Each defendant shall have 30 days after

receipt by or service on that defendant of the initial pleading or summons described in paragraph

(1) to file the notice of removal."  28 U.S.C. § 1446(b)(2)(B).  Under the later-served rule,

applicable in this Circuit, "each defendant has thirty days from when he received service to file a

notice of removal."  *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 65 (2d Cir. 2012).  A defendant

whose time to remove has run can consent to the timely notice of removal filed by another

defendant.  Under Section 1446(b)(2)(C), "[i]f defendants are served at different times, and a

later-served defendant files a notice of removal, any earlier-served defendant may consent to the

removal even though that earlier-served defendant did not previously initiate or consent to

removal."  28 U.S.C. § 1446(b)(2)(C).

The Court need not decide when exactly Sanofi U.S. Services, Inc. was properly served.

There is no dispute that Chattem filed the notice of removal within thirty days of the date on

which it was served.  Its notice, consented to by all properly joined defendants, is sufficient to

remove the case for those defendants, even if their time to file a notice of removal would

otherwise have expired.  *See Barnhart v. Federated Department Stores, Inc.*, 2005 WL 549712,

at \*6 (S.D.N.Y. Mar. 8, 2005) ("[D]istrict courts in this Circuit have generally applied the last-served defendant rule, in which defendants have thirty days from the date that the last defendant is served to file a notice of removal."); *see also Struggs v. City of New York*, 146 F. Supp.3d 461, 463 (E.D.N.Y. 2015) (same).  Moreover, because the time for Sanofi-Aventis U.S. LLC has not even begun to run, the notice of removal by Sanofi-Aventis U.S. LLC is timely and its removal notice also would effect removal on behalf of all consenting defendants.  *See Jordan v. ALN Int'l, Inc.*, 2019 WL 4511719, at \*2 (W.D.N.Y. Feb. 11, 2019) (notice of removal filed by defendant who had not yet been served is sufficient to support removal of claims against defendant who did not timely remove because the running of the thirty-day period is triggered by service and a party which has not yet been served it entitled to file a petition for removal); *McFarlane v. Iron Mountain Inc.*, 2017 WL 2703574 (S.D.N.Y. June 22, 2017) (denying motion to remand for failure to timely remove where one of the defendants filing notice of removal had not yet been served).[6]

## II.     Motion for Stay

Having decided that it has jurisdiction, the Court next turns to whether further proceedings should be stayed.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir.

---

[6] The cases cited by Plaintiff in his reply memorandum of law, Dkt. No. 28 at 1, are not to the contrary.  They do not address the situation presented here where at least one defendant's notice of removal was timely.  *See Ayala v. BOH Trucking, LLC*, 2022 WL 17103790 (S.D.N.Y. Nov. 22, 2022) (both defendants waited more than thirty days after having been served to remove); *Kozlova v. Whole Foods Market Group*, 2021 WL 4755891, at \*5 (E.D.N.Y. Jan. 24, 2021) (single defendant filed untimely notice of removal), *recommendation and report adopted,* 2021 WL 4398234 (E.D.N.Y. Sept. 26, 2021).

2012) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)).  At least in the MDL-context, "[c]ourts in this Circuit consider five factors in deciding whether a stay is appropriate: '(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.'"  *Gen. Elec. Cap. Corp.*, 87 F. Supp. 3d at 471 (quoting *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 370 (S.D.N.Y. 2013)).  "It is common for courts to stay an action pending a transfer decision by the JPML."  *Id.*

Plaintiff does not resist the conclusion that if the motion to remand is denied, the Court should stay further proceedings in the matter.  The parties disagree as to the earliest date that the JPML will hear Plaintiff's motion to vacate.  Plaintiff argues that it is May 25, 2023.  Dkt. No. 24 at 2.  Relying on the same evidence, Moving Defendants argue that it is March 30, 2023.  Dkt. No. 27 at 3.  In either event, the hearing will be relatively soon and "[a] short stay will not prejudice plaintiff[]."  *Gen. Elec. Cap. Corp.*, 87 F. Supp. 3d at 471.  Second, permitting the case to go forward in this forum when the action very well may soon be transferred to the Zantac MDL would prejudice Moving Defendants by creating the risk they will be subject to "duplicative proceedings and inconsistent or inefficient discovery regimes."  *Id.*  Although Plaintiff argues that "preliminary disputes arising in . . . earlier proceedings enable the MDL judge to quickly learn what kinds of discovery and other pre-trial issues are likely to arise in the now-centralized cases,'" Dkt. No. 24 at 11–12 (quoting *Quinn v. JP Morgan Chase Bank, N.A.*, 2020 WL 3472448, at *1 (S.D.N.Y. June 24, 2020)), that general proposition is of limited force based on the facts of this case where Plaintiff has identified no distinctive issues likely to arise in his case that would not also arise in the Zantac MDL.  The interests of the courts favor a stay.

"[A] stay serves the judicial and public interest in letting the JPML decide if the interests in efficiency and economy favor consolidation and transfer." *Gen. Elec. Cap. Corp.*, 87 F. Supp. 3d at 471; Manual for Complex Litigation (Fourth) § 20.131 (2004) (stating that matters "raising issues unique to the particular case[] may be particularly appropriate for resolution before the Panel has the opportunity to rule on the motion to transfer" but that there "would be little purpose in entering a scheduling order").  Although Plaintiff argues that the interests of persons not parties to the civil litigation and the public interest would be served by having a court sitting in New York decide substantive issues of New York tort law, Dkt. No. 24 at 13, he does not resist the conclusion that once the court has resolved those issues, the interests of third parties and the public would be served by entering the requested stay.

## CONCLUSION

The motion to remand is denied, the motion for stay is granted in part and denied in part, and further proceedings in this case are stayed pending the decision of the JPML concerning the transfer of the action to the related Zantac MDL.

The Clerk of Court is respectfully directed to close Dkt. Nos. 9, 16.


SO ORDERED.

Dated: January 25, 2023
          New York, New York                    _____
                                                                LEWIS J. LIMAN
                                                         United States District Judge

20